LISCOMB STATE SAVINGS BANK, Appellant, v. L. R. AKERS, Appellee.

**CHATTEL MORTGAGES:** Description—Live Stock. A description of
1  mortgaged chattels is *prima facie* sufficient when the mortgage calls for "forty-three head Aberdeen Pole cows and calves, about equal numbers of each, and one 2-year-old Aberdeen Pole bull," to be kept on a certain described farm, and the testimony shows that said cattle were the only cattle of said breed possessed by the mortgagor on said farm.

**CHATTEL MORTGAGES:** Lien and Priority—Nonwaiver of Lien. The
2  execution of a new note subsequent to the recording of the mortgage, even for a larger sum, does not work a waiver of the lien, against the intent of the parties.

**TRIAL:** Dismissal by Court—Finding of Fact. The ruling on a motion
3  to dismiss an action tried to the court, made at the close of plaintiff's testimony, does not necessarily embrace a finding of fact binding upon the appellate court as the verdict of a jury.

*Appeal from Marshalltown Municipal Court.*—B. O. TANKERSLEY, Judge.

APRIL 1, 1924.

PLAINTIFF appeals from a judgment dismissing its petition and taxing the costs to it. The facts are fully stated in the opinion.—*Reversed.*

*E. N. Farber,* for appellant.

*C. H. E. Boardman,* for appellee.

STEVENS, J.—This is an action to recover the value of nineteen head of cattle which, it is claimed, appellee purchased of

appellant's mortgagor.   The controversy, on the merits, really
resolves itself into two propositions:   That is,
were the cattle purchased by appellee from the
mortgagor included in the mortgage; and was
the description therein contained so defective that the record did
not impart constructive notice to intending purchasers?   The
full description is as follows:

1. CHATTEL MORT-
GAGES: descrip-
tion: live stock.

"Twenty-four head stock steers of different sizes, ages and
colors purchased of J. H. Buell & Co., Omaha, Neb., Forty-three
head Aberdeen Pole cows and calves, about equal number of
each and one 2-year-old Aberdeen Pole bull.   The above de-
scribed personal property to be held and kept during the life of
this mortgage on the Frank Frimml 240-acre farm located
about 2 miles north of Liscomb, Iowa, and in Union Township,
Hardin County, Iowa."

The twenty-four head of stock steers referred to in the
mortgage were sold in December, 1920, and a part of the pro-
ceeds derived therefrom was applied on the mortgagor's indebt-
edness to the bank.   The forty-three head of cows and calves
were disposed of as follows:   One died, one was sold at public
sale, four were sold to another purchaser, and nineteen were
taken into custody by the trustee in bankruptcy of the mort-
gagor's estate and sold, the proceeds being paid to appellant.
The remaining nineteen are the cattle in controversy.

The first inquiry, that is, whether these cattle were included
in the mortgage description, we think must be answered in the
affirmative.   It is true that the mortgage does not designate the
number of each sex or state the color of the cattle.   Aberdeen-
Angus cattle, which are black in color, are thoroughly familiar
to farmers generally.   The description in the mortgage is "Aber-
deen Pole" cattle.   The breed is distinctive, and the color is
clearly implied.

The law is settled in this state that the description in a
chattel mortgage of the property sought to be covered thereby
is sufficient if it directs the mind of the inquirer to facts or evi-
dence from which he may ascertain or identify the mortgaged
property with absolute certainty.   *Shellhammer v. Jones,* 87
Iowa 520; *Yant v. Harvey,* 55 Iowa 421; *Wells v. Wilcox,* 68

Iowa 708; *Towslee v. Russell,* 76 Iowa 525; *King v. Howell,* 94 Iowa 208; *Kammeier v. Chauvet,* 186 Iowa 958.

Had the mortgage in this case recited that the 43 head of Aberdeen Polled cattle were all of the cattle of that description on the premises of the mortgagor, then clearly the record would have been sufficient to impart constructive notice to prospective purchasers. Mr. Frimml, the mortgagor, testified that he had on his premises, at the time of the execution of the mortgage, 44 head of Aberdeen Polled cattle answering the description in the mortgage. He did not, however, specifically negative the contention now urged by appellee, that the herd was in fact much larger than the number stated. The cashier of the appellant bank, however, testified that he went upon the premises and made a thorough search and inspection immediately before the mortgage was executed, and that there were at that time but 43 head of Aberdeen Polled cattle on the premises. The only contradiction of this evidence is found in the testimony of appellee, who was called as a witness by appellant, examined and cross-examined, and later recalled by counsel for appellee for further cross-examination, and asked as to the number of cattle he saw on the premises in May, 1921. His answer was, "About 50 or 60 head of Aberdeen cattle." The mortgage bears date August 13, 1920, and, as already appears, the cattle were sold to different persons, the dates of the separate sales not being stated in the record. The mortgagor, sometime after the transaction with appellee, was adjudged a bankrupt. A portion of the mortgaged property was sold by the referee, and the proceeds paid to appellant. We are unable to determine from the record the exact number of the 43 head covered by the mortgage that were still in the possession of the mortgagor on May 1, 1921, but, in addition to the 19 head in controversy, we assume that there were the number sold by the referee in bankruptcy. No evidence was introduced of purchases by the mortgagee of Aberdeen Polled cattle after the mortgage was executed.

It is argued by counsel for appellee, upon the authority of *Casady & Co. v. German Sav. Bank,* 159 Iowa 149, that the description in the mortgage was clearly insufficient. The cited case may be readily distinguished from the case before us. In

that case, the claims of three separate mortgagees were involved. In each of the three mortgages, the description was of a certain number of cattle, without the mention of any distinctive marks or means of identification. The mortgagor, at the time of the execution of the several mortgages, had at least the aggregate number of cattle of the general description covered by said mortgages. We held that, as there was no way by which the cattle intended to be covered by the separate mortgages could be segregated or definitely identified from the entire herd, the record did not impart constructive notice.

In the case before us, the evidence of the only witnesses examined who knew the facts, tended to show that the only Aberdeen Polled cattle on the premises were those described in the mortgage. In other words, if we accept the testimony of the mortgagor and the cashier of appellant bank, no difficulty whatever would have been experienced by a prospective purchaser in identifying the mortgaged property. This was not true in the *Casady* case, because the description was so indefinite that no one could have selected from the herd the particular cattle intended to be covered by the mortgage. We are of the opinion that the description in the mortgage was sufficient, and that appellee purchased the cattle with notice thereof.

A jury was waived, and the case tried to the court. At the conclusion of appellant's testimony, counsel for appellee moved "the court to discharge the defendant and render a verdict for defendant for the following reasons:" Then follows a statement of the grounds upon which the motion was based. Briefly, the grounds of the motion were that appellant applied a portion of the proceeds received from the sale of the 23 steers to indebtedness due the bank other than that secured by the mortgage; that the two notes which evidenced the indebtedness which the mortgage secured were marked "paid," and a new note for a larger amount taken in lieu thereof; and that by said transaction the plaintiff waived and extinguished any and all claims against the defendant by reason of the sale and purchase of the cattle in question; that, if all of the sums received by the bank had been credited upon the mortgage debt, it would have been fully paid; that "the description of the property in the plaintiff's mortgage is

2. CHATTEL MORT-GAGES: lien and priority: non-waiver of lien.

so indefinite and uncertain that, in the absence of proof of actual knowledge as to the property intended to be covered thereby, the recording of the instrument sued on gave no notice to anyone, and as to this defendant the mortgage is void and of no effect."

The application by the bank of the proceeds received by it from the sale of the mortgaged chattels was as follows: Of the net amount received from the sale of the stock cattle, which was $1,428.14, $969.82 was credited upon and paid one of the notes secured by the mortgage. A new note for $2,944.76 was executed by the mortgagor. This note represented the aggregate of the larger note secured by the mortgage and several smaller notes held by the bank.

The point is made in this connection that the court, in ruling upon the motion for a verdict, not only sustained the specific grounds thereof, but necessarily passed upon the issues of fact, and that its finding thereon must be given the weight and effect of the verdict of a jury. As stated, the motion, which did not in terms challenge the sufficiency of the evidence, was sustained generally. The fact question presented by the motion went only to the sufficiency of the description: that is, to the number of cattle of the class described in the mortgage which were upon the mortgagor's premises at the time of its execution. The record does not affirmatively disclose that the court found, as a fact, that there were 50 or 60 head of Aberdeen cattle on the premises at the time the mortgage was executed. Such finding, if made, could have been based only upon such inference as might be drawn from the testimony of appellee that, as he saw 50 or 60 head of cattle on the farm in May, when he purchased those in dispute, which was months after the mortgage was executed, the number in August, 1920, exceeded the 43 head described in the mortgage.

3. TRIAL: dismissal by court: finding of fact.

Appellee does not claim that he counted the cattle or made any particular effort to ascertain the exact number in the herd. What he gave was evidently a mere estimate. When shown the mortgage, later on, he said that he had got the cattle of that description. The court was not asked to pass upon the fact questions, but to direct a verdict upon legal grounds. Appellee

did not rest, but, by filing the motion to direct a verdict, reserved the right to offer testimony in his own behalf. The ruling on the motion disposed of the case finally, and of course no evidence was introduced by him. It is our conclusion that the motion should have been overruled. We are not called upon to treat the finding of the court upon a fact question as the equivalent of a verdict by the jury. No such finding is shown to have been made. The description in the mortgage is *prima facie* sufficient.

Other questions discussed by counsel for appellee do not present grounds for affirmance. The lien of the mortgage was not released by the change in the amount of the note, and by the execution of a new one, even for a larger sum, to evidence the indebtedness. The intention of the parties is clearly shown. The judgment of the court below is—*Reversed.*

ARTHUR, C. J., EVANS, PRESTON, and VERMILION, JJ., concur.