STATE SAVINGS BANK OF SHARPSBURG, Appellant, v. UNIVERSAL CREDIT COMPANY, Appellee.

No. 46333.

FEBRUARY 8, 1944.

O. J. Kirketeg and Flick & Lucas, all of Bedford, for appellant.

C. Glenn Garten and James M. Stewart, both of Des Moines, for appellee.

HALE, J.—The appellant is a bank in Taylor county, with a branch at Gravity, about six miles north of Bedford. Ed Bray, doing business as the Bray Motor Company, lived at Bedford but banked with the Gravity branch. He handled Ford automobiles on what is commonly known as a floor-plan arrangement with appellee, Universal Credit Company, a Des Moines concern. By this arrangement Bray purchased cars from the Ford Motor Company on conditional-sale contracts. The Ford Motor Company then sold these contracts to appellee. Involved in this controversy are four automobiles purchased from the Ford Company in four different deliveries and sold by Bray under conditional-sale contracts to four of his employees, which contracts retained the title in the seller. These purchasers executed notes to the Bray Motor Company and entered into conditional-sale contracts accompanying the notes, dated respectively October 20, 1940, December 19, 1940, March 20, 1941, and March 18, 1941, and designated as Exhibits A, A-1; B, B-1; C, C-1; and D, D-1. The Ford Company sales contracts for these cars, and assigned to appellee, were all dated prior to the dates of the sales of these cars by Bray to his employees and transfer of said conditional-sale contracts to appellant.

On the purchase of cars from the Ford Company, the bills of lading and invoices were sent by that company to the Gravity branch of appellant bank, with instructions to collect certain small sums and to secure the signature of Bray to the contracts. When this signature was obtained, and the instruments were acknowledged, the bank delivered the bills of lading to Bray and forwarded the various amounts collected, together with the

signed contracts, to the Ford Motor Company at Des Moines, and the latter then sold and assigned the contracts to Universal Credit Company, appellee, but such contracts had been neither filed nor recorded at the time of the sale of the employees' contracts by Bray to the appellant bank.

On or about May 2, 1941, appellee, claiming the cars under its contracts, took possession of them in Taylor county and drove them into Adams county. An action of replevin was then begun by appellant. The writ issued but appellee executed bond and resumed possession of the cars. There was trial to a jury in the Adams County District Court and the jury returned a verdict awarding possession of the cars to defendant (appellee) and judgment was entered thereon. Motion for new trial, exceptions to instructions, and motion to set aside the verdict were all overruled, and plaintiff appeals.

The questions involved in this case have been before this court heretofore in State Savings Bank v. Universal Credit Co., 233 Iowa 247, 8 N. W. 2d 719, decided April 6, 1943, after the trial of the present case in the district court. The issues and the evidence are practically the same in both cases. As is stated by appellant in its argument, the Polk county case was between the same parties, ''involving the same questions of law, almost the same witnesses, in fact all of the main witnesses, and having almost the same facts.  *  *  *  Essential exhibits were the same or had been filled in on the same kind of printed forms.  Exhibits 1, a wholesale floor plan conditional sales contract and number 5 an underlying agreement in this case were exhibits 1 and 6 in the former case.'' To this statement of appellant, the appellee in its argument adds: ''As pointed out by the appellant the evidence was in a great degree similar to the evidence given at the trial of the companion case tried in Polk County, Iowa  *  *  *.''  So we have here a case which in its facts is substantially on all fours with one which was decided by us less than a year ago. It is therefore unnecessary, and would be repetition, to discuss many of the questions decided in that case, the same having been fully reviewed by Justice Oliver in his opinion. In substance, that case held that the note and contract between Bray and his employee were accommodation instruments which the parties thereto intended should acquire legal vigor by assignment from

Bray to a third person and payment thereof to Bray; that Bray's retention of the automobile would not in itself render the contract invalid; that the unconditional sale and assignment by a vendor to a purchaser vests the assignee with title, is in the nature of a bill of sale, and the assignee is a purchaser within the contemplation of the recording act. It further recites the rule that under the recording act a prior conditional sale is to be regarded as invalid, as such, against a purchaser, in the absence of notice, actual or constructive. And it is held that an assignee who takes a conditional-sale contract, regular upon its face, in good faith and for value, and without notice of its accommodation character is a purchaser as against a prior unrecorded conditional-sale contract of which he is without notice and which is therefore invalid. This, in brief, is the substance of our holding in the first case as to the law governing transactions such as the one in the instant case.

Both parties in their arguments agree that this case turns upon the relative merits and priorities of the retail conditional-sale contracts held by appellant, and the wholesale floor-plan conditional-sale contracts held by appellee. The four notes and four retail conditional-sale contracts purchased by appellant bank from Bray were all on the same printed forms. Appellant's conditional-sale contracts, Exhibits A-1, B-1, C-1, and D-1 were all substantially the same, except as to names and dates, as were the contracts involved in the Polk county case.

I. The principal and determinative question in this case, paralleling as it does the former case, is whether or not the evidence of notice to the assignee of Bray presented a jury question. As stated in the former opinion, the burden was upon the assignee, appellant herein. The Universal Credit Company in the former case contended, as it does here, that the record conclusively showed the bank had such information as to put it on notice and that there should have been a directed verdict. This court ruled against such contention but did hold that the evidence presented a jury question. This court said [233 Iowa 247, 255, 8 N. W. 2d 719, 724]:

"Whether information is sufficient to put a purchaser or creditor on notice of an unrecorded instrument has been said to be a mixed question of law and fact. It is sufficient if it would

put a reasonable man upon inquiry which would certainly lead to a discovery of the rights under said instrument."

The opinion further sets out that the contract, with a bill of lading attached, had been sent to the bank with instructions to collect a small differential payment and secure the signature of Bray, but that this was not sufficient of itself to constitute notice; and the court held that the question of whether the assignee bank was put upon notice which required it, in good conscience, to make inquiry of the credit company concerning the title of the bank's customer was a question upon which reasonable minds might well differ, and hence was for the jury, as was also the question whether the bank had knowledge sufficient to put it upon inquiry that the contract between Bray and his employee was merely an accommodation instrument and as between the parties thereto did not represent a bona fide conditional sale.

We have, therefore, a recent pronouncement of this court which applies to the facts in this case and establishes that these two questions were matters to be determined by the jury. It so happens that the jury in the former case rendered a verdict for plaintiff, while another jury, under the facts submitted in this case, determined in favor of defendant. Under these circumstances it is not within our province to interfere with the verdict unless we find that upon submission of the case there was such error as would require a reversal. In actions such as this we are limited to the correction of errors.

II. Appellant urges that the court erred in requiring it to fix the values of the automobiles involved in the action in Adams county instead of Taylor county, from which place said cars were taken. The court at first apparently was in some doubt as to the place where valuation should be fixed, but there was one witness who testified as to one car that the value in Taylor county was $900. After fixing the value of the other cars in Adams county, the place of trial, the witness testified that:

"By value of a car I testified to I mean what I think it would bring at retail in and around Gravity * * *."

This was evidence of its value in Taylor county. But we are satisfied that the error, if there had been error, would have been of little materiality. The court's Instruction No. 5 referred

to the right of possession and told the jury that if they found appellant was entitled to possession of the cars, they should then fix the value in Taylor county. But the jury by its verdict found that appellant was not entitled to possession of the cars and found for appellee. Therefore, there was no requirement that the value of the cars be fixed at any place since the appellant was held by the verdict not entitled to possession. We do not think there is any ground for complaint in this respect.

III. Appellant argues that the court was in error in permitting appellee to introduce evidence that appellant's contracts were not bona fide contracts and in permitting evidence that they were fictitious. In another division appellant argues that all testimony as to the matters and acts in connection with the dealing between Bray and some of his employees who bought the cars in controversy should have been withdrawn from the jury since there was no showing that these facts were known to appellant or its agent. Appellant's ground of complaint appears to be that the court in ruling upon certain parts of appellee's answer had struck out certain portions asserting the invalidity of the Bray contracts with his employees. There was a general denial pleaded in the answer, which put in issue the allegations of appellant in its petition that it was the bona fide and innocent purchaser of the contracts and that Bray Motor Company sold the cars to the four purchasers. Aside from its failure to comply with our former rules as to assignments of error, we do not think appellant's objections should stand. Mr. Dowell, manager of appellant's branch bank at Gravity, testified on cross-examination, and without objection, to the employment of these men by Bray. The business relationship of Bray and his employees was in evidence and of this fact there was little dispute, if any. Much of the testimony went in without objection. But appellant argues that such evidence admitted by the court, coupled with the statement in Instruction No. 1 that if the jury found for the appellant it must find that the Bray Motor Company sold the various cars, was prejudicial, and urges that the law does not require bona fide sales but only requires that accommodation notes and contracts shall be regular on their face, and appellant was therefore prejudiced by the testimony which appellant claims tends to show bad faith. Appellant claims

further prejudice on account of the fact that four of its witnesses had been permitted to depart as a result of the court's ruling on the defense urged in appellee's answer and struck out by the court. There is no showing that the witnesses could not have been procured or what their testimony would have been. We have thus set out fully appellant's assignment of error. In view of the pleadings, the undisputed facts, and the evidence we are satisfied that there was no prejudicial error in the admission of this evidence.

IV. Appellant assigns as error the withdrawal of certain exhibits and part of the evidence in relation thereto, and claims that the withdrawal was indefinite and confusing. However, the ruling of the court seems quite clear, and, if misunderstood, no attempt or request seems to have been made to clarify it. Some of these exhibits applied to cars other than those in controversy and some involved immaterial matters. The court properly held that the proof in regard to some of the exhibits was insufficient to show payment on the cars in question and the other exhibits were introduced for the purpose of impeachment on a collateral matter and were immaterial.

V. Appellant urges that there was a lack of evidence to support the verdict. With this we disagree. The validity of the assignment and its effect, especially on the question of notice, as we have heretofore indicated, was for the jury. Neither was there any error in overruling appellant's motion at the close of the evidence asking the withdrawal of any issue in the case as to the notice of the lien of appellee's conditional-sale contracts having been given. All of this was for the jury and the motion was properly overruled. There was testimony from which the jury could have found notice.

There are other objections to instructions but they are based on grounds we have hereinbefore considered and do not constitute error.

As to the other errors assigned, we have examined the evidence and the instructions of the court and find no reversible error. On the whole case we are satisfied that the verdict of the jury and judgment thereon must stand. The case is therefore affirmed.—Affirmed.

All JUSTICES concur.