WHITE, Judge.
The defendants seek reversal of a summary final decree foreclosing a recorded chattel mortgage. The sole point on appeal is whether the chattel mortgage sufficiently described certain beverage licenses so as to put an interested third party on notice of the lien.
The record discloses that the plaintiffs sold a business known as Jebb’s Cocktail Lounge to James J. Petrakis and Sandford A. Commins in 1957. As part of the purchase price the buyers executed their promissory note in the amount of $6,500.00 secured by a chattel mortgage which covered :
“All furnishings, fixtures and equipment located in that certain business known as Jebb’s Cocktail Lounge at 260 Central Avenue, St. Petersburg, Florida, as is more fully shown by the inventory attached hereto and made a part hereof by reference, any and all liquor, wine and beer licenses held in the name of James J. Petrakis, the trade name, inventory and good will of said business, and this mortgage shall be a lien upon the entire inventory of merchandise as the same shall, from time to time, exist at the time of any default under the terms of this mortgage and the note which it is given to secure;” (emphasis supplied)
Between April 1957 and October 1959, the beverage licenses went through a series of transfers both in ownership and location, eventually coming into the possession of defendant Lundy’s Incorporated. After the plaintiffs filed suit to foreclose their chattel mortgage, Lundy’s Incorporated went into receivership and Paul S. Hubbard was named party defendant as receiver. In holding the description in the mortgage sufficient to place a purchaser for value on notice of the lien, the chancellor entered an order which reads in pertinent part:
"3. That the mortgage note and mortgage sued upon by the plaintiffs in this cause are in default as alleged in plain’tiffs’ Amended Complaint and said mortgage constitutes a valid lien upon the property hereinafter described. The said mortgage gave the plaintiffs, as security for said note, a lien on ‘any and all liquor, wine and beer licenses held in the name of James J. Petrakis,’ and this is the property that is the subject matter of this foreclosure. While the number of the license would have been helpful in identifying it, the mortgage- attached to the license regardless of the number of transfers thereof. The mortgage sufficiently described the license in the name of James J. Petrakis, and as recorded in the Public Records which are indexed by grantor and grantee, it constituted constructive notice to Lundys, Inc, It is incumbent upon a purchaser to . check the chain of title and search public records for a *309 reasonable period of time. The two and one-half years herein involved was a reasonable period of time. The expiration of licenses on October 1st annually does not affect the property value of a liquor license, since vested in its holder is a preferential option of renewal. That on April 23, 1957, the date of the said note and mortgage, James J. Petrakis owned and held an alcoholic beverage license from the State Beverage Department of Florida, number 62-495; that said license number 62-495 is also known as a ‘liquor license’ and the lien of plaintiffs’ said mortgage attached to said alcoholic beverage license number 62-495 of the State Beverage Department of Florida. On April 30, 1957, the plaintiffs caused their mortgage to be recorded in Volume 82, pages 5 through 9, inclusive, of the Official Records of Pinellas County, Florida. On or about April 28, 1958, the defendant, James J. Petrakis, transferred his interest in said license to Paul Doyle and caused the said license to be transferred to said Paul Doyle; that on or about July 23, 1958, said Paul Doyle transferred his interest in said license to the defendant, H. P. Sprenger, and caused the said license to be transferred to said H. P. Sprenger; that on. or about October 21, 1959, said H. P. Sprenger transferred his interest in said license to the defendant, Lundy’s, Inc., who were doing business as Lundy’s Liquors No. 7 and said H. P. Sprenger caused the said license to be transferred to the said Lundy’s, Inc., that the said Lundy’s, Inc., was the holder of said license at the time plaintiffs Amended Complaint and lis pendens were filed and subsequent thereto the defendant, Paul S. Hubbard, receiver for Lundy’s, Inc., was appointed receiver of the property and effects of said Lundy’s, Inc.; that under plaintiffs’ said mortgage, plaintiffs have a lien on the State Beverage Department of Florida’s alcoholic beverage license number 62-495, which lien is prior, paramount and superior to all rights, claims, liens, trusts, encumbrances and equities of all of the said defendants and all persons, firms or corporations claiming by, through or under said defendants or any of them.” (emphasis added)
A liquor license has the quality of property with a pecuniary value far in excess of the license fees exacted by the state, county or city;[1] and such licenses may be subjected to the lien of a chattel mortgage.[2] The question of the sufficiency of the description of property encumbered by chattel mortgage was expounded in principle by the Florida Supreme Court in First National Bank of Panama City v. First National Bank of Chipley, 1925, 90 Fla. 617, 106 So. 422, 423:
“It is admitted that appellant’s mortgage was properly recorded. As to creditors and subsequent purchasers, re-cordation is essential to the validity of a chattel mortgage in this state, unless the mortgaged property is turned over to the mortgagee. Section 3838, Rev.Gen.Stats.1920; Spellman v. Beeman, 70 Fla. 575, 70 So. 589, L.R.A. 1916D, 240.
“Courts recognize well-established, but no inflexible, rules for determining the sufficiency of the description in a chattel mortgage, and such rules are less rigid than those applied to conveyances of real estate. As between the parties, it may be generally said that a description of the property mortgaged is sufficient, if it so identifies the chattels that the mortgagee may say, with a reasonable degree of certainty, what property is subject to his lien. As against third persons, the de *310 scription in the mortgage must point out its subject-matter so that such persons may identify the chattels covered by it; but it is not essential that the description be so specific that the property may be identified alone. If such description suggests inquiries or means of identification zvhich, if pursued, will disclose the property conveyed, it is sufficient. * * *
“An inspection of the pertinent parts of the description in the mortgages quoted in this opinion discloses that as to certain items they appear to cover separate and distinct chattels, but as to other items we think the terms of appellant’s mortgage were ample to suggest inquiries which, if pursued, would have disclosed to appellee, a third party, the identity of the property covered thereby.” (emphasis supplied)
The defendant contends that although the description of the involved state license may have been sufficient as between mortgagor and mortgagee, it was not sufficient as against the defendant who is a third party purchaser for value;[3] that no exercise of “due .diligence” would have connected the state license purchased by it with the license formerly owned by James J. Petrakis because the number thereof was not specified in the mortgage and no chain of title to the license was reflected in the public records of Pinellas County to put the defendant on notice. The defendant further urges that it had a right to rely on the bulk sale affidavit of its vendor that it had been furnished a list of all the vendor’s creditors.
The defendant’s bulk sales argument is rejected without further discussion as being plainly beside the point posed by the particular circumstances. The sufficiency vel non of constructive notice to the defendant in the light of the descriptive language of the mortgage is the prime question, and we are constrained to uphold the chancellor’s affirmative determination of that question.
It is apparent that except for interpolating the number of the subject state license there was little more that could have been done to identify it in the mortgage. The mortgage by James J. Petrakis was recorded in Pinellas County. Lundy’s Incorporated thereafter purchased the encumbered license from H. P. Sprenger apparently on the representation by Sprenger that the license was not encumbered. Lun-dy’s Incorporated, however, was charged with knowledge of information of “public record” which could have been ascertained by checking the chain of license transfers at the State Beverage Department.[4] Such inquiry would have disclosed the name of James J. Petrakis as holder of the license in question from April 1957 to April 1958,. and a check of the Pinellas County records would have revealed the chattel mortgage-covering the license.
•It is no pleasure to decide a case in: which the adversaries are almost equally blameless and yet the loss must fall on one or the other. Such was the unenviable situation confronting the chancellor whose ruling is not shown to be contrary to law.
Affirmed.
ALLEN, Acting C. J., and SHANNON,. J., concur.

. Kline v. State Beverage Department, Fla.1955, 77 So.2d 872, 874.

. Yarbrough v. Villeneuve, Fla.App.1964, 160 So.2d 747.

. Defendant cites 10 Am.Jur. Chattel Mortgages § 55; 14 C.J.S. Chattel Mortgages § 57a (3); 6 Fla.Jur. Conditional Sales, etc., § 36.

. § 561.23 F.S.A. provides that liquor licenses shall be issued in quadruplicate of which one copy shall go to the director of the Beverage Department and one copy shall go to the district office of the county where the license is located. Transfer of said licenses must be made upon application to and approval by the State Beverage Department. See e. g. Sections 561.32 and 561.33 F.S.A. as promulgated by chapters 65 A-309, 65 A-3.21 and 65 A-2.06 Florida Administrative Code.